Hi, good morning to the clerk. Can you call the first case for us? Good morning. 18-1379 Michael DeBell v. City of Chicago Good morning. Good morning, your honors. Good morning, counsel. I'm Jeffrey Schwab on behalf of the appellants. I'm going to reserve four minutes for rebuttal, please. Counsel, what's the city's intent with this tax? Say that again. What is the city's intent? I'm not sure exactly what that is. Isn't it to get money? I assume the tax... That's what I'm asking. I don't know. I assume it's... I'm going to ask them the same question, but I wanted to see what you thought their intent was. Well, they're imposing a tax on streaming services under their amusement tax. I assume that their intent is to tax something that they view as amusement. And is that how other jurisdictions have done it? As far as I can tell, in terms of municipalities, cities, towns, villages, the City of Chicago is the only city in the United States that taxes streaming services this way. There are some other states that do so. But those raise different legal implications. As you know, the first claim that we have is an Illinois Constitution claim. Obviously, states are sovereign. So how they tax is different than how a home rule unit taxes in the state of Illinois. Okay. May it please the Court. The City of Chicago's amusement tax ordinance imposes a 9% tax on all admission fees and other charges paid by patrons of every amusement within the city. In 2015, the city began taxing charges paid to witness, view, or participate in amusements that are delivered electronically. Would that include cable TV as well? Cable TV is not included as an amusement delivered electronically. It has been traditionally charged as amusement in the city's ordinance. But it's different than streaming services because cable TV is connected to a physical location in the city. So you have to have the cable company come out to your house, connect the cable to your house, and plug it in to your house. So unlike streaming services, which as long as you have Internet access, you can access anywhere in the world, anywhere you have Internet access. So Netflix, for example, I can watch Netflix. I could watch it right now if I wanted to on my phone, but that would probably be a bad idea. But you can watch it anywhere. You don't have to be at your home location. So the difference between streaming services and cable TV is that cable is connected to a physical location. But wouldn't that make a stronger argument for cable to be subject to this tax rather than a streaming service? Cable TV is subject to this tax. That was how I started my question. Right. Does cable have this same tax? And you said no. I did not intend to say no. It is subject to this tax, and it has been longer than streaming services have been subject to this tax. I don't know when it started, but it's been, I think, at least more than a decade or so. But to get the streaming services, because it's connected to the Internet, ultimately don't you still have a cable that you have to rely on? No matter whether you're watching it somewhere else, in order to connect to the Internet, you still need to be accessed somehow to a cable, don't you? Well, you can access the Internet on your phone, and it doesn't need to be plugged in or anything. It obviously goes to a cell phone tower. You can also connect via Wi-Fi. What about YouTube? Is that subject to this tax? It would be if you had to pay for YouTube. So I don't know if they still have it. They had a subscription. Right, something like that. And I don't know if they still have it, but if they did, it would be subject to this tax. What about Facebook, Facebook videos? Facebook is free, so I don't think it's subject to this tax. Are they starting to do television programming now as well? So I guess my question is, Mr. Schwab, doesn't it seem like it's kind of slippery that technology keeps changing every single day, and what the services are that you can access on your phone changes every day? So aren't we running the risk of certain things being taxed and certain things not being taxed just because we're unaware of them? Well, I actually think that's the problem with the way that they tax streaming services, which is that they tax streaming services by imposing the tax on people that have a billing or home address in Chicago. Can I stop because you just said billing, and I have not read the word billing anywhere in the statute. So that's, it says residence or your business residence, your business, I'm trying to think of the language, your residence or your place of business, but it doesn't say your billing address, which certainly could be different. That's true. I believe that if you read the interpretation, the ruling by the commissioner, it does include billing or home address. We're not allowed by that, right? No, although that does seem to me to be the driving indicator of how the city is doing this. They did pass in their ordinance in 2017, I believe, language that indicated that from the city council in a, I believe it was a budgetary ordinance, but indicated something like if they tax streaming services, they can do it through the Mobile Sourcing Act. I think what you're thinking of is the Mobile Sourcing Act, which is the state statute that allows the municipalities to tax cell phone usage. And there's an argument by the city that that allows them to therefore tax streaming services, but the language of the Mobile Sourcing Act is very precise and only applies to cell phone usage. And it doesn't make any sense either, because the text of the statute says that you can tax, essentially cell phone usage, they have a very technical term, but it's cell phone usage and it has to be by a mobile service provider. So that would be a cell phone company. Well, that requirement doesn't make sense if we're talking about streaming services, because most streaming services, if not all streaming services, are provided by companies that aren't mobile service providers. In other words, cell phone companies like AT&T or Verizon. As far as I'm aware, AT&T and Verizon, T-Mobile, those companies don't have any subscription streaming services. And so the city says, well, at the very least, under the Mobile Sourcing Act, we should be allowed to tax streaming services that are provided by cell phone carriers, like AT&T and T-Mobile. But there's nothing in the record that indicates that those companies actually have any subscription streaming services that one pays for. And also, the fact is that mobile service provision is not the same as streaming service. The city does say that there is some language that said that you can tax charges associated with cell phone service. And they say, well, that's streaming services. But the problem with that argument is that it essentially says, well, you can get the Internet on your phone. So therefore, if you're paying for streaming services, that's associated with cell phone usage, because you can access it on your cell phone. The problem with that is that streaming services are accessed on the Internet. It's content that's provided on the Internet. So if the city's argument is right, then what they're essentially arguing is that the Mobile Sourcing Act allows them to tax content on the Internet, which would be a huge expansion of their power to tax. In fact, it would be so huge, because almost anything is on the Internet. I can pull up my cell phone and do banking on the Internet. Does that mean that the city of Chicago can tax banking? It clearly can't under the Illinois Constitution, because that's one of the things that the state has not allowed home rule units to tax. That's why it gets me back to my original question when I asked you what the intent here was, because in those circumstances that you mentioned, if a municipality or a state wants to tax, they tax the user. Here, the way this tax is set up, and that's why I was trying to figure out what the intent here is, is it's not so much the user, right? Because you could have Netflix at your residence. You're the one that's charged for the billing of Netflix, but you might have family members who also could access it. They could use it. You don't use it. So you as a user are not being taxed, even though you are, because they've indicated it's the primary residence or primary business. So who are we taxing here? What's the intent here? I think that's a good question, and it gets to a lot of points that I think are important and explain why this tax is really different than how the city taxes amusements generally. Because on the one hand, the city does say this is a tax on users, but Netflix is required to collect the tax. So Netflix, when we talked about billing addresses earlier, usually you don't provide your home address to Netflix, because they don't care where you live other than they want to make sure that you have a credit card, and that credit card has your billing address. So usually you'll put in your credit card information. I think the last time I looked at Netflix, they don't even require an address. They just require the zip code that your credit card is, you know, where your credit card bill goes to. So you just put in your zip code, and then Netflix says, oh, it's a zip code in Chicago, we're going to collect the tax on whatever you're paying, and then that shows up on your bill. You get charged an extra, if you're paying $10, an extra 90 cents, and then every month or every 15 days, I can't remember which, Netflix sends all the money that it collected to the city. But one of the other problems with that is that for companies that are outside of Chicago, that Chicago doesn't have jurisdiction in, they're never going to collect the tax. And at the deposition, I believe the city's witness testified that they don't go after individuals. So I like to use this example. Suppose there's a company in Poland. They do Polish language movies. There's some people in Chicago, they speak Polish. They think, I'd like to watch a Polish movie. They subscribe on the Internet to the service. They can watch Polish language movies. The city's not going to go after a company based in Poland. It can't. It doesn't have jurisdiction to say, hey, by the way, you've got to collect our tax for us. And so those people that subscribe to that service will never pay that tax. And then similarly, there are people that use streaming services while they're in Chicago that don't have billing addresses in Chicago. So I think the most likely example is Spotify. Spotify is a music application that you can listen to on your phone or anywhere that you have a connected device. And they have a free service which allows you to listen to pretty much any song they have, but every once in a while you have to listen to a commercial. Or you can get the paid service, which you don't have to listen to any commercials. You can listen to as much music as you want, as long as you want. It also has the feature where you can temporarily download music. So if you happen to be in a non-Internet space like an airplane, then you can listen to that music. Well, people from the suburbs come downtown into Chicago every day. They might put on their headphones, get on the train, go into Chicago while they're at work, listen to Spotify on their computer, and they're not paying the tax at all, even though every single day they're using streaming services in Chicago. So again, that's my question then. What's the intent of this tax? Is it intended to just tax the owner of the residence that has the address for the credit card? Or is it for use? Because if it's an amusement tax, then you tax the user that's enjoying the amusement. Yeah, I agree. It has to be. The amusement tax is for use of amusements in Chicago by the users or the patrons. And the point of all of that argument is that this tax on streaming services is not that. It does not do that consistently. Because it doesn't tax everybody that uses streaming services in Chicago, because there's a whole host of reasons. If you speak to a lot of millennials, a lot of times they'll be on their parents' Netflix. Maybe their parents don't live in Chicago, and their parents don't watch a lot of Netflix, and they watch a lot of Netflix. They live in Chicago. They're never going to pay the tax, because their parents are the ones that have that. And that's unlike the way that the city taxes every other amusement. If you go to a White Sox game, it doesn't matter if you live in Chicago. If you don't live in Chicago, when you buy that ticket, you're paying the amusement tax. And similarly, if you live in Chicago, and you decide to go to a St. Louis Cardinals game, you're not paying the city the amusement tax just because you live in Chicago. So the point, and I think, Your Honor, is correct, that the way that they're taxing streaming services is different. And so if the intent is that they want to tax, and what the amusement tax says is they want to tax users of amusements in Chicago, the way that they're doing it does not do that. And because they're taxing people that can use streaming services outside of Chicago, their application of the amusement tax to streaming services violates the Illinois Constitution, because they're taxing things outside of their jurisdiction. And the Illinois Supreme Court dealt with this similar question a couple of years ago in the Hertz case, where the city was attempting to tax vehicle rentals. And their ordinance required that vehicle rental companies that were located within three miles of Chicago's borders had to collect Chicago's vehicle lease tax for all Chicago residents, unless the resident could come up with some justification that they weren't going to use the car primarily in Chicago. And the Supreme Court said you can't just assume that somebody from Chicago is going to use the vehicle in Chicago just because they're from Chicago, and you don't have a jurisdiction, the city does not have jurisdiction to tax activity that takes place outside of its borders. That's exactly what the city was trying to do in Hertz, and that's exactly what the city is trying to do here, by taxing activity that inevitably takes place outside of its borders. And so for that reason, the city's application of the amusement tax to streaming services violates the Illinois Constitution. Now we talked a little bit about the Mobile Sourcing Act, and the Mobile Sourcing Act does not save the city's intent to apply activity outside of Chicago. So if the General Assembly decides that this is the only way that municipalities can tax... Hang on. This is my message for everybody. Turn off your phones, please. I'm sorry, Councilor. You're going to have to wind up in a couple of minutes. Sure, that's all right. So if the General Assembly decides this is the proper way for municipalities to tax streaming services and we want municipalities to tax streaming services, then they can pass a bill that allows them to tax this way, just like they passed the Mobile Sourcing Act that said that Chicago can tax cell phone usage based on their primary location and also based on the fact that there is a cell phone provider that has an area of service in that municipality. But that Mobile Sourcing Act does not provide any basis for the city to tax streaming services. I don't know how much time I have left, but I can get into it. A minute. A minute. You know what? I'll just reserve my time for my report. Thank you. Thank you. Good morning. I'm Suzanne Loos. I represent the city of Chicago, the Appalachian, in this case. It may please the Court. This morning I will explain that the city's method of tax collection for streamed amusements is a proper exercise of municipal authority. And what's the intent? Well, the intent is to tax streamed amusements in the same way that city taxes every other amusement that takes place in the city of Chicago. And to answer your question about the user versus the subscriber, say, that is usually the case in streaming, it actually, in other contexts, it's not always the user. It's the person who pays for the privilege of attending an amusement. So if you buy a ticket to a concert and you give it to your niece, the person who bought the ticket is obviously the one that pays. And so it kind of goes the same way in the context of streaming amusements. Well, what about the example that counsel used where, let's say, you're a parent, right? You live in Indiana. You have children maybe going to Northwestern. You're paying for Netflix. You don't get a tax on that. But if the scenario is the other way around, you're taxing someone who doesn't really use the streaming services. Right. Well, there are going to be some particular applications, practical things that may come up, and those kind of applications could be looked at on an individual basis by the comptroller to see whether or not on an as-applied basis. This is a facial challenge, and whether or not there are some individual circumstances where the application could be extraterritorial does not validate facially a law that is capable of proper application without extraterritorial reach. This has been going since 2016, correct? They've been collecting this revenue since 2016? Yes. How much revenue are we talking about? I'm told it was about $16 million last year. And it has, by the way, been collected since 2016 without any major incident, without anything surprising a lot. I would assume the lawsuit is an incident. Well, I mean, no claims of extraterritorial reach. This doesn't come up that frequently. And a lot of times if a parent is paying for a student in another state, it might be on a family plan, so there still might be a lot of viewing here in Chicago. Do you agree with counsel that this is the only municipality in the entire country that is assessing this type of tax? No. There are other municipalities that are taxing streaming as well as states. I don't know the exact count. It seems to be increasing. And I don't know the exact – I'm not taxing it as an amusement tax. No, I just want to – But I didn't hear what she was saying. She spoke over. I'm sorry. All right. Go ahead. There are other municipalities that are imposing a tax on streaming tax. I don't know the exact details. I mean, often they're using the tax system they have in place because – I don't know if it's under amusement. Some places tax amusements themselves under their use tax laws. So – Is there any other case in the entire country which has upheld a streaming tax such as Chicago? This is the first one that's been tested as far as I'm aware. I'm lucky. But, you know, times change and amusements change. And really it's the same exact principle that's always been applied in amusement tax cases. So I'd like to stress, first of all, I mean, it's our position that it's not extraterritorial, as applied to the plaintiffs, which we submit is, you know, the typical situation, because it's not extraterritorial to collect the tax, the amusement tax, from a resident who has paid primarily for the privilege of viewing or listening to amusements in Chicago. And residence is a reliable indicator of where streaming usually occurs. Plaintiffs themselves are a case in point. They pay Netflix, Hulu, and Spotify to stream almost exclusively in their home. Netflix and Hulu they watch 75 to 90 percent in their Chicago residence when they're living in Chicago. And Spotify is a little bit more on the go, but it's still in the home or while they're walking around Chicago or on their commutes. So even with all of that streaming going on in Chicago, and I meant to start out by saying there is no dispute that streaming in Chicago is an amusement that is taxable, by the way. So even with all of that taxable streaming going on, plaintiffs argue they can't be taxed because the city can't know for sure every time it's being streamed in Chicago or based on the possibility that it will be streamed somewhere else. But that approach does not fit with how this court has decided cases addressing the city's authority to tax amusements. For example, you mentioned cable, and there is an important case, Communications and Cable, that dealt with that when cable first started being taxed under the amusement tax back in, I believe it was 1995. And there the courts look at the main thing that the taxpayer is paying for and the claim is very similar there. The plaintiff said that the city may be authorized to tax some aspects of television, but there are other non-amusement aspects of television, educational programming, informational like the news. But the court said, you know, we're not going to slice and dice to look at every single application when you're paying a subscription fee for your cable TV, you're going to look at what is the main thing, the primary purpose why you're paying for the subscription. And there it was for cable television programming, and that was primarily an amusement purpose, and so therefore the city could collect the tax. What about their argument that, well, with streaming you don't have a cable, you don't have a physical item in terms of you could say, okay, well that's why we're taxing this. Well, sure, there's a difference between a physical cable connection and an Internet connection. It nevertheless remains true that most streaming occurs in the jurisdiction where residents live. Again, plaintiff's situation is a case in point. Counsel, do they update regularly what are things that could be taxed for streaming services? So, for example, as I ask counsel, YouTube, if they have YouTube Red or whatever that's called that they have to pay for, how is that updated? Well, under the ordinance, if a provider of streaming charges a fee for that, they are the owner, manager, or operator who is required to collect the tax for streaming in Chicago. So it's placed on any provider that charges a fee to stream anything, porn, whatever, correct? Yes. Okay. So if you pay a subscription fee, the city is entitled to a cut of that? Yes. If you pay a subscription, if you're a resident of the city. I don't know if there's porn subscriptions out there, but if there were, the city technically could get. Well, I mean, if it's an illegal, you know, then obviously not. Assuming we're dealing with legal streaming services that there is a fee paid for, yes, and it can be difficult to identify when that occurs, but one way that we've figured out how to do that is residents, because by and large that is how it's done, and that it does make it more like communications and cable, certainly more like communications and cable than like in Hertz. Yeah, what about, you know, they're relying on Hertz versus the city of Chicago. Right. As an example that, you know, territorial effect of a tax is unconstitutional. Right, and Hertz, we submit, is quite distinguishable in large part because in that case, the court concluded that residents alone was not a reliable predictor of use in Chicago, and that was, you know, in part because the entire lease transaction in Chicago had a regulation that it was trying to impose on suburban car rental companies to identify residents who would be using vehicles in Chicago, but the entire transaction took place outside of Chicago. That was significant to the Illinois Supreme Court. The resident was outside of Chicago at the time that that took place, and also there's an inherent difference in the nature of what was being taxed there, which was a short-term car rental, which could just as easily be for, I mean, people rent cars to go places, not to hang out at home typically. So, I mean, it could be for a purpose in Chicago. It could also be certainly residency wasn't as reliable of an indicator of use in Chicago. And I'd also like to point out that it's useful to look at how residence is actually used as a presumption in other situations where there are mobile products and how that's treated. Residence is frequently in a well-accepted and reasonable basis for presuming where tax activity occurs, even when there are the possibilities that sometimes tax activity will occur somewhere else. So vehicle taxes on when you buy a vehicle or taxes on cell phone use are examples, and also a big one is the Illinois use tax. That statute presumes use when tangible property is delivered to a residential address in Illinois. Of course, it's possible that what you receive at that address might well be used on vacation or in another town, taken to work in another town, things like that. But it's regarded as reasonable to presume that taxable use will occur where you reside, even though that can happen. Now, and the city can, in the exercise of its home rule authority, use the same kind of reasonable presumption as the General Assembly to zero in on Chicago activity that is taxable. For example, Illinois also can't tax for uses that occur in Indiana, for example, but the General Assembly can reasonably rely on residence to avoid that, and that's what the city of Chicago is doing here. What about, now that you mentioned the state, your argument about the tax violating the Internet Tax Freedom Act, the imposition of the taxes in violation of that, particularly Section 1101? Well, that is similar to the uniformity clause challenge. That is a provision in the federal statute that prohibits discrimination of taxation in electronic commerce and defines that to mean tax rates or tax collection responsibilities that are different for products or services that are bought online versus similar products that are bought or offline, like if you order a pair of shoes from Zappos versus going over to the DSW. The same pair of shoes should be taxed at the same rate. And there's no discriminatory treatment like that going on here because streaming is taxed at the same rate as similar amusements, like movies, for example, and cable TV are prime examples. As for the other types of amusements that plaintiff tries to compare streaming to, those aren't similar, actually, it's quite evident in certain situations. Like, for example, the city does not rely on residency for a hockey game at the United Center because what the city is trying to do is find the location of the amusement, and there you're going to the amusement, so that's the address. Of course, streaming is something people use in the home, and so it's more like the amusement comes to them. So that's an obvious reason that those uses are dissimilar and treated differently in terms of relying on residential address. And the other two are also very different types of amusement, automatic amusement devices and live cultural performances involving limited seating. So automatic amusement devices involve a physical machine and a business open to the public that is charged very differently on a per-use basis in which there would be great difficulty collecting in the same way that the city does for charges for a subscription fee, for example, which is only once a month as opposed to game by game. So in that, those differences are self-evident, and the differences are not so similar that they would be treated the same. It doesn't even make sense to use the same kind of emblem on a machine sort of system in the context of streaming. So your argument is that they're taxed in the same manner? They are taxed in the same manner. as movies, for example, movie rentals and cable TV. And I would also like to address some of these sort of hypothetical situations of things that might arise, like the one you mentioned about a student in another state. Practical problems like that may arise with particular applications, although I will say that this has been in place since 2016, and we really haven't seen those kind of things coming up in the several years. It's gone pretty smooth. But in those situations, a taxpayer or a tax collector can attempt to rebut the presumption that's in the ordinance, either in the course of a tax assessment or in a refund request or in a request for guidance from the comptroller. The Department of Finance spends a great deal of time fielding calls, asking for guidance either formally or informally. And, you know, the comptroller will decide each of those cases on the facts that arise. But there are important principles that will guide those situations, including, you know, when the student is paying in another. For one thing, if it is clear that a tax is due and owing in another municipality and paid, you get a credit for that in Chicago. There's no risk of double taxation. And also, the other guiding principle, when these exceptions arise, would be whether the taxpayer is paying primarily for an amusement in Chicago. And that's one that's going to turn a lot on the particular facts of the case. And that is what all these procedures provided by the Department of Finance are for. And I would like to just also emphasize one other case that I think is very analogous. It did involve an extraterritoriality change. And it is an Illinois Supreme Court decision that the court still cites with approval and did so in Hertz, although it distinguished the case. That is Mulligan v. Dunn. That case involved out-of-county wholesalers who sold alcoholic beverages to retailers in Cook County. And the crux of their extraterritorial argument was much like the plaintiff's here, was that the product might not actually be sold in Chicago. It wasn't really Chicago, it was Cook County. It could be moved to another location, it could be broken, it could be returned. But whether that happens or not, the court's approach was, the main purpose of buying this product was the retailers buying the product to sell it in Cook County. That's in-county activity. And the mere possibility that that could occur is not the kind of thing that will facially invalidate a law that is fully capable of being applied non-extraterritorially. And just briefly, I'm not sure if I'm out of time, that is one, as it applies to plaintiffs, and the typical case we submit is a constitutional application, but just very briefly, also we do submit that it is constitutionally applied as to streaming that is provided by mobile telecommunication providers. And that tax has been applied in that context since 2009. Some providers bundle streaming, and they do, and there are examples in the record of when telecommunication providers bundle, sometimes they pay for Netflix and include it in their subscription price. Sometimes they do have their own app that can be used for streaming. There are several examples in the record. And when they do that, taxing that streaming is authorized expressly by statute and therefore not an unconstitutional exercise of the city's taxing power. We cite the statute in the brief. In addition to what my opposing counsel emphasized about associated, what the statute actually says is that it includes the charges for mobile telecommunication services includes also a service provided as an adjunct to commercial mobile radio service. That's pretty broad language, meaning anything that you would add to your subscription, your general mobile telecommunications service. So we submit that that has been and is perfectly constitutional. And so if you have, I'm sorry. I'm just going to ask you to wind it. But yes, and that's exactly what I was going to do. So if there are no further questions, we do ask that the judgment of the circuit court be affirmed. Thank you. Opposing counsel gave some examples of ways that the city taxes other things based on the residency requirement. But the difference between those cases and this case is that in those cases, the General Assembly explicitly allowed them to tax things that way. In this case, it has not given them the authority to do so. And that's really the basis of our constitutional case. If the General Assembly has not given the city the basis to tax things that can take place outside of the borders, then it can't do it. In terms of amusements in general, I think what I was trying to get at in my opening is that there's no way to tell where somebody is using an amusement because there's no way because I can use any of the streaming services anywhere in the world without anyone knowing that every time that I pick up a device to use a streaming service, I could be using it outside of the city. And the city doesn't know. In fact, when the plaintiffs testified about how much they use streaming services in Chicago, they had to guess. They don't know. The questions were like, would you say more than 50%? And our clients were maybe more than 50%. They don't know because nobody thinks that's the benefit of streaming services. You don't have to think about where you use them. You can use them anywhere. If you're on vacation, you can. But isn't this more with regards to taxing the subscription instead of the use? Because if it was the use itself, you know, you're using it for hours and hours and hours, that means you would be paying the tax during your use of the amusement. But here, isn't it the tax really more on the subscription? But the subscription allows the use, and the tax on amusement is for the privilege to use streaming services in Chicago. And with other amusements, again, it's the privilege, but that's exactly why it doesn't make any sense why the city relies on residents. Because if it is the privilege to use the subscription or the streaming services in Chicago, then there's a whole host of people that aren't being taxed. Anybody that comes into Chicago and doesn't have a billing address or people that use streaming services and don't provide a billing address. And in fact, in this case, one of the plaintiffs moved from Chicago to Tennessee. And when she moved, she went on her credit card website and changed her billing address. But she forgot to go on her Netflix account and change the billing zip code. And so she was paying the Chicago amusement tax for her Netflix, even though she was outside of Chicago and using it exclusively outside of Chicago. Couldn't she get a refund? Now, she might be able to get a refund, but the example shows how just putting in the wrong zip code can allow you to either pay the tax or not pay the tax. And presumably Netflix didn't check. I haven't personally tried to see if this would work, because obviously I wouldn't want to intentionally avoid taxes. But if that's the case, then that means this is not really even based on residency. It's just based on if you provide a particular zip code. And that's not a rational way to tax the use of streaming services. And in fact, it's not even a constitutional way to tax streaming services. I don't know how much time I have left. None. None? Okay. Well, then I will rest on my brief and thank the Court. Thank you. Thank you for both sides. We will certainly take the case under advice.